**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Frank Padro,<br><br>                    Petitioner,<br><br>    v.<br><br>Charles Warren et al.,<br><br>                    Respondents. | Civil Action No. 11-6166 (MAS)<br><br><br>OPINION |

**APPEARANCES**:

Frank Padro, pro se
#514955
New Jersey State Prison
Lock Bag R
Rahway, NJ 07065

Christopher J. Gramiccioni
Acting Monmouth County Prosecutor
Monmouth County Prosecutor's Office
123 Jerseyville Avenue
Freehold, NJ 07728-2374

**SHIPP**, District Judge

      Petitioner, Frank Padro ("Padro," "Petitioner," or "Defendant"), has filed the instant

petition for habeas corpus pursuant to 28 U.S.C. § 2254. He raises numerous claims in his

petition, including ineffective assistance of counsel and prosecutorial misconduct, among others.

For the reasons set forth below, none of his claims are meritorious and the Petition is denied.

## I. FACTS

The facts underlying Petitioner's conviction, which are not in dispute, are as follows. On January 8, 2003, there was an armed robbery at 1416 Main Street in Asbury Park, New Jersey. *See State v. Padro*, A-3127-04T4 at 2-4 (N.J. Super. Ct. App. Div., Apr. 23, 2007), ECF No. 16-33. Dina Euceda, owner of the store in question, was alone in the store when a man entered, dressed in black, wearing a black ski mask. *Id.* The man was armed with a handgun, and demanded that Ms. Euceda open the register. *Id.* After Ms. Euceda opened the register and gave the man the cash that was inside it, the man demanded she open the safe and turn over the jewels within. *Id.* After Ms. Euceda was unable to open the safe, the man hit her on the head with the gun several times and threatened to kill her. *Id.* Shortly thereafter, Ms. Euceda's daughter, Carla Sandoval, arrived. Ms. Euceda yelled for her daughter to call the police. Ms. Sandoval ran from the store and hid behind a car. *Id.* at 2-3. The intruder then took the cash, the jewels, Ms. Euceda's cell phone and left the store. *See* Transcript of Trial at 54:21-25, *State v. Padro*, A-3127-04T4 (N.J. Super. Ct. Law Div., Oct. 28, 2004), ECF No. 16-5.

Mr. and Mrs. Sanchez were driving by the store at the time and noticed the man in black leaving the store. The man in black was followed by Ms. Euceda, bloody and yelling that she had just been robbed. Mr. and Mrs. Sanchez called the police and followed the man in black while on the phone with the police. *Padro*, A-3127-04T4 at 3, ECF No. 16-33.

Officer Alix Antoine and Detective Robert Ash of the Asbury Park Police Department responded to the call, travelling to where the Sanchez couple said the man in black was hiding. The officers approached a man in black crouching behind a fence, hiding in between two houses. *See* Transcript of Trial, *supra*, at 102:19-25. The man ran from the police, scaled a 6-foot fence, and then was subdued by Officer Antoine, who drew his service weapon and ordered the man in

black to lie on the ground. *Id.* at 94:10-22. The man in black had been carrying two duffel bags, inside of one was a pair of brown gloves and a black mask. *Id.* at 96:10-13. In the man's pockets, the officers found a gun, cash, jewels, and Ms. Euceda's cell phone. *Id.* at 5:14-20. The man was later identified as Defendant. The officers drove Defendant back to the jewelry store where Ms. Euceda, Ms. Sandoval, and the Sanchez couple all identified the man as the perpetrator. *Padro*, A-3127-04T4 at 4.

After Defendant was arrested, he posted bail, went to Connecticut, and was picked up several months later on an open warrant. *Id.* Defendant testified at trial that he was indeed in Ms. Euceda's store that afternoon, but as a patron. He claimed that he went there in an attempt to sell some of his own goods and was in the process of showing some to Ms. Euceda when the gunman walked into the store. *Id.* He claimed that he and the gunman struggled, he wrestled the gun away from the other man, and then left the store. *Id.*

## II.  PROCEDURAL HISTORY

In February of 2004, Petitioner, was convicted of first degree armed robbery in the Superior Court of the State of New Jersey, Atlantic County. This was considered his "third strike" under N.J.S.A. 2C:43-7.1, New Jersey's "Three Strikes" law, and Padro was sentenced to life in prison without the possibility of parole. *Id.* Petitioner appealed his conviction and sentence to the Appellate Division, which affirmed both. *See State v. Padro*, A-3127-04T4 (N.J. Super. Ct. App. Div. Apr. 23, 2007), ECF No. 16-35. Petitioner subsequently petitioned the Supreme Court of New Jersey for certification and his request was denied. Petitioner then filed a petition for Post-Conviction Relief ("PCR") with the Superior Court of New Jersey, Law Division, and his petition was denied in a lengthy written opinion. *See State v. Padro*, No. 03-05-0919 (N.J. Super. Ct. Law Div. Jan. 30, 2009), ECF No. 16-48. Petitioner appealed to the Appellate

Division for PCR review, and the Appellate Division affirmed the denial. *See State v. Padro*, A-3143-08T4 (N.J. Super. Ct. App. Div. Feb. 8, 2011), ECF No. 16-56. On June 16, 2011, the Supreme Court of New Jersey denied Mr. Padro's petition for certification. *State v. Padro*, 207 N.J. 35, 21 A.3d 1186 (2011).

Petitioner filed his original petition on October 17, 2011 in this Court. Petitioner then filed an amended petition on April 24, 2012. This case was transferred to the undersigned on March 10, 2015.

Petitioner asserts several claims in his habeas petition before this Court. He claims that New Jersey's "Three Strikes" law is unconstitutional as-applied to him, that his counsel at every level was ineffective, and that he is not procedurally barred by R. 3:22-5 from challenging portions of his sentence. *See generally,* Amended Petition for Writ of Habeas Corpus, *Padro v. Warren*, No. 11-6166 (D.N.J. Apr. 24, 2012), ECF No. 8. Petitioner also claims that evidence seized from a duffel bag he was carrying on the day of his 2004 arrest must be suppressed as fruit of an illegal search, that the prosecutor at his initial trial impermissibly "vouched" for his own witness, and that testimony presented on behalf of the State about firearms was unduly prejudicial and should have been barred. *Id.* Petitioner, further, challenges the sentencing judge's reliance on an aggravating factor at sentencing. *Id.* at 26.

## III. CLAIMS

Petitioner raises the following issues on federal habeas review, some of which were raised at trial, on direct appeal, to the PCR court, and on appeal from the denial of PCR.  His claims are stated here in his own words:

1. Evidence seized from Petitioner's duffel bags at the time of his arrest should have been suppressed at the trial level.

4

2. The prosecutor erred by impermissibly "vouching" for state's witness and by intimating that Petitioner committed the crime because he "badly needed money."

3. Detective DeAngelis' testimony regarding firearms was cumulative and unduly prejudicial. Therefore, Detective DeAngelis' testimony should have been barred.

4. The trial court erred by relying on unauthenticated documents from his 1986 Cumberland County conviction during his sentencing hearing.

5. The sentencing Judge impermissibly relied on "Aggravating Factor Number 9" when sentencing Petitioner.

6. The Appellate Court erred by affirming Petitioner's conviction because of Prosecutor's prejudicial remarks.

7. Petitioner's Cumberland County conviction was improperly treated as "substantially similar" to Petitioner's other criminal convictions.

8. Petitioner was denied effective assistance of trial counsel for counsel's failure to challenge Petitioner's 1986 Cumberland County conviction as a "strike" against him for purposes of Petitioner's sentencing.

*See* Amended Petition for Writ of Habeas Corpus, *supra*, ECF No. 8 at 12.


## IV. DISCUSSION

A.   Standards Governing Petitioner's Claims

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson,* 712 F.3d 837, 846 (3d

Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), federal courts in habeas corpus cases must give considerable

deference to determinations of the state trial and appellate courts. *See Renico v. Lett,* 559 U.S.

766, 773-774 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The

statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the

application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses: the "contrary to"

clause and the "unreasonable application" clause. The Court held that under the "contrary to"

clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to

that reached by [the Supreme] Court on a question of law or if the state court decides a case

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* A

federal court may grant the writ under the "unreasonable application" clause, if "the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Section 2254(d)(1) therefore applies to questions of mixed law and facts.

In addition, a federal court must confine its examination to evidence in the state court record, which should be reviewed to assess the reasonableness of the state court's factual determinations. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008); *see also* 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. *See Lewis v. Horn*, 581 F.3d 92, 109 (3d Cir. 2009). "A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding." *Eley,* 712 F.3d at 846 (internal quotations omitted).

B.    Petitioner's Claims

In analyzing Petitioner's claims, the Court will address them in an order to facilitate comprehension, rather than in the order presented in the Petition. The Court, further, groups some related claims together for ease of understanding.

1.    Failure to Suppress Evidence as Fruit of an Illegal Search (Ground One)

Petitioner first argues that his Fourth Amendment rights were violated when one of his duffel bags was seized by the arresting officers after he was already in handcuffs. Both the trial court and Appellate Division rejected this claim, and it is not cognizable on federal habeas review.

The Supreme Court has ruled that, as to collateral review, "the costs of the exclusionary rule outweigh[s] the benefits of its application." *Marshall v. Hendricks*, 307 F.3d 36, 81 (3d Cir.

2002) (citing *Stone v. Powell*, 428 U.S. 465 (1976)). According to the Supreme Court, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494.

Here, there was a full and fair litigation of Petitioner's Fourth Amendment claim. As noted, both the trial court and Appellate Division considered Petitioner's claim on the merits. Specifically, in affirming the trial court, the Appellate Division on direct appeal held that police "may conduct a warrantless search of the contents of a container in the possession of an arrestee even if the arrestee no longer has access to the container . . . if the search is conducted contemporaneously with the arrest." *Padro*, A-3127-04T4, ECF No. 16-35 at 7 (internal citations and quotations omitted). In reaching this conclusion, the appellate court rejected Padro's argument that the search was impermissible because he was already in handcuffs when the officer searched the bag, reasoning that the search of Padro's bag was supported by case law. *See id.*

In light of both courts' consideration of this claim on the merits, this Court is satisfied that Petitioner's Fourth Amendment claim was fully and fairly considered. At most, Petitioner is attempting to argue that the state courts incorrectly applied Fourth Amendment standards, but such a claim is not cognizable on habeas review. *See Gatson v. Bartkowski*, No. 10-5610(DRD), 2013 WL 2459905 (D.N.J. June 6, 2013) (noting that a petitioner's argument that the state court incorrectly invoked the automobile exception to the warrant requirement was not enough to overcome the full and fair litigation bar).

2. Petitioner's 1986 Conviction from Cumberland County being counted as a "Strike" for the Purposes of New Jersey's "Three-Strikes" Law (Grounds Four and Seven).

Petitioner raises two separate grounds in support of his claim that his 1986 conviction for armed robbery was improperly counted as a "strike" against him in the sentencing phase of his trial. First, Petitioner argues that the sentencing court relied on "unauthenticated documents" and therefore his life sentence was "illegally authorized" (Ground Four). Secondly, Petitioner argues that his 1986 conviction is not "substantially similar" to his most recent conviction, thereby removing him from the statute's purview (Ground Seven). This second challenge is addressed first.

In Ground Seven, Petitioner argues that his 1986 Cumberland County conviction is not substantially equivalent to his other convictions, thereby making the imposition of N.J.S.A. 2C:43-7.1 improper as applied to him. The Appellate Division, on direct appeal, was the last court to address the merits of this claim. Petitioner attempted to raise this same issue on PCR; however, citing New Jersey Court Rule 3:22, the state courts refused to hear the claims a second time because they had been heard on direct appeal.[1]

As an initial matter, the appellate court noted that Petitioner was misreading the statute and confusing it with N.J.S.A. 2C:44-3, the discretionary extended term sentencing statute:

> Defendant's first argument is based upon a misreading of N.J.S.A. 2C:43-7.1. Defendant equates it with the statute defining a persistent offender, N.J.S.A. 2C:44-3. The Legislature, however, by its use of different language, created a different category of offender. An individual may receive a discretionary extended term under N.J.S.A. 2C:44-3 if the individual is more than twenty-one years old and

---

[1] Seizing on this procedural history, Respondents erroneously argue in their Answer that this claim is procedurally defaulted for this Court's purposes. Contrary to their argument, "[a] petitioner who has raised an issue on direct appeal . . . is not required to raise it again in a state post-conviction proceeding." *Adamson v. Cathel*, 633 F.3d 248, 255 (3d Cir. 2011) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)).

> has been previously convicted on at least two separate occasions of two crimes,
> committed at different times . . . if the latest in time of these crimes or the date of
> the defendant's last release from confinement, whichever is later, is within 10
> years of the date of the crime for which defendant is being sentenced.
>
> An individual is subject to a mandatory sentence of life without parole under N.J.S.A.
> 2C:43-7.1 if convicted under, among other crimes, N.J.S.A. 2C:15-1 and convicted of
> two or more substantially equivalent crimes committed on two or more prior and separate
> occasions. Further, the crime for which a defendant is being sentenced must have been
> committed either within 10 years of defendant's last release from prison for any crime or
> within 10 years of the date of the commission of the most recent of the crimes for which
> defendant has a prior conviction. Based upon our review of defendant's pre-sentence
> report, the accuracy of which defendant did not challenge at his sentencing, the trial court
> correctly determined that defendant was subject to the terms of N.J.S.A. 2C:43-7.1 ….

*Padro*, A-3127-04T4, ECF No. 16-35 at 11.

The Appellate Division then found that Petitioner's 1986 conviction for armed robbery

was substantially equivalent to his recent conviction for same. The appellate court reasoned that

many of the cases Petitioner cited were inapposite because they were related to the discretionary

extended term sentencing statute, N.J.S.A. 2C:44-3, not the "Three Strikes" statute, N.J.S.A.

2C:43-7.1. *See id.* at 12. The appellate court further explained why it rejected Petitioner's

argument on state law grounds:

> We also reject defendant's contention that his conviction in New York for what he
> terms a "Class B" felony is not "substantially equivalent" to a conviction for first-
> degree robbery in New Jersey. According to defendant's pre-sentence report, he
> was convicted in New York in 1986 of robbery, criminal use of a firearm and
> possession of stolen property. However, the phrase "substantially equivalent"
> used in N.J.S.A. 2C:43-7.1 does not refer simply to the same range of sentence
> exposure; rather, the criminal conduct underlying the earlier conviction must be
> "qualitatively similar." *State v. Oliver*, 316 N.J. Super. 592, 598-99 (App. Div.
> 1998), *aff'd.*, 162 N.J. 580 (2000).

*Id.*  The court disposed of Petitioner's remaining challenges on state law grounds as well. *Id.* at

11-12.

Petitioner now turns to the federal courts for redress, hoping the Court will do what the

state did not. Generally, however, matters of sentencing are governed by state law and the federal

courts must defer to a state court's application of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). As Petitioner's claims involve state court application of state law and do not raise any constitutional issues, federal habeas corpus relief must be denied. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("…state courts are the ultimate expositors of state law…"). Even if this Court construed the Petition as raising a constitutional due process challenge under the Fourteenth Amendment, Ground Seven would still fail because Petitioner's argument is premised on a factual misunderstanding of which sentencing statute was applied to him, and because Petitioner has not pointed to any Supreme Court law contravened by the state court's ruling.[2]

In Ground Four, Petitioner's contention that his sentence must be vacated because the sentencing judge relied on "unauthenticated documents," is similarly meritless. By invoking the phrase "unauthenticated documents," Petitioner appears to be referring to the fact that the plea negotiations transcript relating to his 1986 Cumberland County robbery conviction is no longer available. *See* Amended Petition for Writ of Habeas Corpus, *supra*, ECF No. 8 at 22-23. Petitioner urges the Court to agree that his 1986 conviction cannot count as a strike under the "Three Strikes" law if the record of his plea negotiation has vanished. *Id.*

---

[2]      In his reply brief, Petitioner further argues that application of the "Three Strikes" law to him violates the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005). However, that decision interprets the Armed Career Criminal Act, 18 U.S.C. 924(e). The Supreme Court's ruling, in that case, is germane only to sentencings under that federal law and, therefore, is not applicable to Petitioner here.  *See Shepard*, 544 U.S. at 26; *Garrus v. Sct'y of Pen. Dept.*, 694 F.3d 394, 408 (3d Cir. 2012) (stating in ruling on a habeas petition that "*Shepard's* holding was limited to a federal statute that is inapplicable here, and its constitutional discussion was mere dicta, [the petitioner] cannot rely on it for relief.").

The Appellate Division, on review from the denial of PCR, rejected this argument, reasoning that the destruction of Petitioner's 1986 plea negotiation transcripts is of no consequence. *Padro*, No. A-3143-08T4, ECF No. 16-56.[3] Specifically, the appellate court found that there was other credible evidence of Petitioner's 1986 sentence, describing in detail the pertinent contents of the sentencing proceeding and judgment of conviction:

> On appeal, defendant has not asserted through a certification or other proof that he, in fact, was not guilty of the Cumberland County offense, either as a principal or accessory to the crime. Further, he has offered nothing that would suggest that the factual basis for his plea to that crime was inadequate or that he sought through a motion filed in Cumberland County to vacate his plea on that basis. Indeed, the transcript of the sentencing proceeding and the judgment of conviction provide strong evidence that defendant's conviction was factually supported. At sentencing, concurrent twenty-year custodial terms were imposed for armed robberies committed in Cumberland . . . Count[y], with a ten-year period of parole ineligibility, consecutive to the sentence for armed robbery that defendant was then serving in New York. The sentencing judge described defendant's New Jersey crimes as follows:

>> On 12/5/1985 you committed an offense of armed robbery, a jewelry store in Vineland. The victim was an elderly man, 67 years old, who was hurt very seriously as a result of this offense. I'm aware that you might not have been in the store, but you conspired, you were part of it. You also received the proceeds.
>> Just a few days thereafter, on the 13th, you participated in a robbery in Hammonton at Cancuso's Jewelry. This was an armed robbery, and also considered by this court to be a very, very serious offense.

> Further, the judgment of conviction stated:

>> This defendant was convicted of two armed robberies. The court considers the gravity and seriousness of the harm inflicted upon the victim, particularly Leon Zylberman who was 67 years of age at the time. These two crimes were professional and planned.

> In support of his position, defendant, ignoring this evidence, relies solely on the fortuitous circumstance that, after more than twenty years, the record of his plea hearing has been destroyed. However, this circumstance is of no assistance to

---

[3]     While the copy of the opinion provided by Respondents is incomplete, the Court obtained a complete copy of the decision via Westlaw. *See State v. Padro*, No. A-3143-08T4, 2011 WL 382557 (N.J. Super. Ct. App. Div. Feb. 8, 2011).

defendant because he, not the State, has the burden of proof. Our review of the record in this matter satisfies us that defendant has not met his burden.

*Padro*, 2011 WL 382557, at *2-3.[4]

As before the state court, here, Petitioner does not suggest that he was actually innocent of robbery with a firearm in 1986. That his plea transcripts were destroyed does not absolve Petitioner of the crime itself and, consequently, has no effect on his sentencing under the "Three Strikes" law. More importantly, Petitioner has not pointed to any constitutional violation resulting from the sentencing judge's reliance on the 1986 conviction. Therefore, Petitioner has not shown that the state court decision to uphold the treating of the conviction as a strike was contrary to or an unreasonable application of Supreme Court law.

Accordingly, for the foregoing reasons, habeas relief is denied on Grounds Four and Seven of the Petition.

3.    Ineffective Assistance of Trial Counsel (Ground Eight).

Relatedly, Petitioner alleges that his counsel was ineffective at trial because he failed to challenge the use of the 1986 Cumberland County criminal conviction by the trial court. Raised for the first time in Petitioner's petition for PCR, the ineffective assistance of counsel claim was deemed procedurally barred by the PCR court in violation of New Jersey State Court Rule 3:22-3. The Appellate Division, on PCR review, upheld the denial but engaged in an analysis of the merits nonetheless. *See Padro*, 2011 WL 382557, at *2-3. It is this analysis of the merits that will govern the Court's consideration under § 2254(d).

---

[4]    To be clear, the Appellate Division addressed the relevance of the missing plea transcripts in the context of the ineffective assistance claim discussed herein; nonetheless, its analysis applies with equal force to Petitioner's underlying claim here.

13

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim. First, the petitioner must show that, considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Second, a petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694.

Additionally, in assessing an ineffective assistance of counsel claim under AEDPA, the Supreme Court has noted that the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. *See Williams*, 529 U.S. at 390-91. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States District Court. Under AEDPA, though, the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 389. A state court must be granted both deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

Here, Petitioner argues that his counsel at trial was ineffective for failing to raise the issue of whether Petitioner's Cumberland County conviction was a valid "strike" for purposes of imposing a life sentence without parole pursuant to N.J.S.A. 2C:43-7.1(a). Looking to

14

Petitioner's Cumberland County conviction, the Appellate Division wrote that Petitioner "has not asserted through a certification or other proof that he, in fact, was not guilty of the Cumberland County offense, either as a principal or accessory to the crime." *Padro*, 2011 WL 382557, at *2. The Appellate Division went on to note that Petitioner had adduced no evidence at all that his Cumberland County plea deal was somehow unsupported or in error. On the contrary, after the Appellate Division reviewed the record, it was satisfied that the conviction was "factually supported." *Id.* Indeed, as illustrated above, the appellate court supported its ruling with quotes from the 1986 sentencing transcript, as well as the related judgment of conviction. More to the point, this Court has already found no constitutional error in the state court's decision that the 1986 conviction is indeed a valid strike for the purposes of New Jersey's "Three Strikes" law. Therefore, Petitioner cannot rely on this purported error to demonstrate that the result of his sentencing proceeding would have been different. Nor has he pointed to any other evidence demonstrating same.

In sum, it is clear that the state court properly applied *Strickland* as Petitioner failed to show any prejudice resulting from the alleged ineffective assistance of counsel. Petitioner has not demonstrated that, had counsel raised the Cumberland County strike argument, that the sentencing court would have imposed a lesser sentence. Based on its review of both the record and Supreme Court precedent, the state court reasonably concluded that Petitioner's ineffective assistance claim is meritless and thus habeas relief will be denied.

4. Use of "Aggravating Factor 9" at Sentencing (Ground Five).

Petitioner argues that the sentencing judge's use of aggravating factor 9 was improper. New Jersey's statute that defines a persistent offender, N.J.S.A. 2C:44-3, relies on aggravating and mitigating factors contained in N.J.S.A. 2C:44-1. Aggravating factor 9 applies when there

exists a "need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(9). Petitioner raised this challenge before the PCR court at the trial level.

The PCR court at the trial level held that Petitioner's argument was procedurally barred under New Jersey Rule 3:22-4, and the appellate court agreed without setting forth its reasoning. Petitioner argues that the PCR and appellate courts were wrong to bar his claim and that it should not be treated as procedurally defaulted by the federal courts, or, in the alternative, that Petitioner qualifies for an exception to the procedural default rule.

In this case, the Court need not determine whether the aggravating factor claim is procedurally defaulted because it fails on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). As discussed *infra*, on direct appeal, the appellate court noted in its analysis of Petitioner's "aggravating factor 9" argument, that Petitioner was misreading the "Three Strikes Law" and confusing it with N.J.S.A. 2C:44-3, the discretionary extended term sentencing statute. *Padro*, A-3127-04T4 at 11.

Reviewing the sentencing transcript, it is clear that Petitioner was sentenced pursuant to the "Three Strikes" statute, N.J.S.A. 2C:43-7.1a, and that aggravating factor 9 had no substantive effect on Petitioner's life sentence. *See* Transcript of Sentencing, *State v. Padro*, A-3127-04T4 (Feb. 18, 2005), ECF No. 16-8 at 18:20-22:19 (sentencing Defendant under N.J.S.A. 2C:43-7.1a). At the sentencing, the sentencing judge did, in fact, find that there was sufficient evidence to support application of aggravating factor 9. *See id.* at 18:20-22 ("I find aggravating factors 3, 6 and 9 to be more than amply supported by [Defendant's] criminal history ...."). The judge went on to clarify, however, that his consideration of the aggravating factor was "redundan[t]" in light of the "Three Strikes" law, which provides that those who meet "the criteria . . . shall be

16

sentenced to life imprisonment by the Court with no eligibility for parole." *Id.* at 18:22-19:3. Later in the transcript, the judge confirmed that he sentenced Petitioner to life without parole solely upon the basis of the "Three Strikes" law. *Id.* at 20:14-21:3 (discussing the "four main requirements of the three strikes sentence," and finding them satisfied).

Therefore, despite the trial judge's reference to aggravating factor 9, Petitioner's sentence did not take that factor into account. Instead, as the Appellate Division correctly noted on direct appeal, Petitioner's sentence was based upon application of the "Three Strikes" law. For this reason, Petitioner's claim fails because it is based on a misunderstanding of the record. More to the point, Petitioner has not shown that the state court's ruling was based upon an unreasonable determination of the facts, or that it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. Accordingly, habeas relief is denied on this ground.

5. Prosecutorial Misconduct (Grounds Two and Six).

Petitioner next asserts that his constitutional rights were violated when the prosecutor at his trial "vouched" for Mrs. Euceda, the victim of the robbery, and intimated that Petitioner badly needed money. It is indeed improper for a Prosecutor to vouch for his own witness, just as it is improper to argue to a jury that a defendant committed a crime because he is poor – but neither of those occurred here.

The Supreme Court has held that the "touchstone of the due process analysis in cases of alleged prosecutorial misconduct is fairness of trial, not culpability of prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The Supreme Court has previously held, in *Darden v. Wainwright*, that when "[m]uch of the objectionable content [of the prosecutor's remarks] was invited by or was responsive to the opening summation of the defense," the comments are

unlikely to rise to the level of unfairness that requires a new trial. 477 U.S. 168, 182 (1986). Indeed, the Court further explicated in that case that the prosecutor's comments "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id.* According to the Supreme Court, courts must also consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly. "In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant." *United States v. Young*, 470 U.S. 1, 12 (1985).

A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, as the statements or conduct must be viewed in context. Here, the appellate court found that the prosecutor did not actually "vouch" for anyone's credibility, instead seeing the Prosecutor's comments as a response invited by defense counsel. Indeed, defense counsel, in its summation, said "[Mrs. Euceda] only gets upset when her deceit may be uncovered. But I suggest to you that it is this deceit that causes the emotional display that she puts on…" Transcript of Oral Argument at 9:7-14, *State v. Padro*, A-3127-04T4 (Nov. 4, 2004), ECF No. 16-9. The prosecutor responded in his summation by rebutting defense counsel's attack on her credibility and by arguing that Mrs. Euceda was more credible than Petitioner. *Id.* at 31. Specifically, he argued:

> There was the suggestion that Mrs. Euceda didn't give you straight questions and straight answers. You'll recall the testimony when you heard her. What does your gut tell you about her demeanor? How did you size her up? Was she somebody that simply had problems with language or was nervous about testifying especially when being cross-examined. Or is it something else. Something that was suggested. You will make that determination about her credibility but listen to what your gut told you when you heard her …. The other witnesses. Did they try to add to their story, to pump themselves up? The defendant did, didn't he?

*Id.* at 30:13-31:19. As stated by the Appellate Division on PCR, "the prosecutor [is] entitled to ask the jury to compare the credibility of Ms. Euceda with that of Defendant." *Padro*, A-3127-04T4 at 7, ECF No. 16-35. Petitioner has not pointed to any Supreme Court case law to the contrary.

Moreover, the appellate court correctly noted that "[n]othing that [the prosecutor] said can reasonably be interpreted as the prosecutor 'vouching' for [Ms. Euceda]'s credibility," *i.e.*, implying to the jury that he personally knew she was telling the truth. *Id.* The prosecutor's response is not the vouching imagined in *Darden*, where it was suggested that an improper prosecutor might suggest he personally knew things the jury did not know, or that he might deliberately misstate evidence. The prosecutor even made a point to remind the jury that "[t]here was a suggestion that Mrs. Euceda didn't give you . . . straight answers," making it clear that he was simply responding to defense counsel. Transcript of Oral Argument, *supra*, at 30:13-20, ECF No. 16-9. Accordingly, the Appellate Division's ruling that the prosecutor did not impermissibly vouch for Mrs. Euceda is neither contrary to, nor an unreasonable application of Supreme Court law.[5] To the contrary, the appellate court properly interpreted and applied Supreme Court precedent.

---

[5]     In addition, while Petitioner's counsel argued at the trial court PCR hearing that the following statement constituted vouching, that statement likewise does not involve the prosecutor suggesting that he personally knew things the jury did not. The statement was in response to testimony by Defendant that a ring found in one of his duffle bags was actually his, rather than Mrs. Euceda's: "You could believe Mrs. Euceda just based on her own credibility. You could take her at her word that she would recognize her own ring. I don't wear jewelry. I see that some of you do. If somebody took your ring and I showed it to you again, would you know your ring? I think you would." *Id.* at 33. This statement simply directs the jury to consider Mrs. Euceda's credibility based on their experiences in identifying their own jewelry; it does not "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant." *Young*, 470 U.S. at 18.

Next, regarding whether the prosecutor intimated that Petitioner was guilty because he was in need of money, after reviewing the transcript it is clear that the Appellate Division was well supported in its conclusion that the prosecutor was again merely responding to defense counsel. By way of background, the Appellate Division explained:

> Corporal Mark Walsh of the Asbury Park Police Department testified as a rebuttal witness. He said that as he was processing defendant at police headquarters, defendant said that he had to commit the robbery to raise money to get his son out of jail. Defendant resumed the stand to deny making any such statement. Defense counsel in his summation sought to refute Corporal Walsh's testimony by telling the jury that defendant had posted his own bail of $100,000 the day after he was arrested, arguing that this demonstrated defendant had no need to rob the jewelry store.

*Padro*, A-3127-04T4 at 8, ECF No. 16-35. The prosecutor subsequently stated to the jury: "[y]ou have some information as to why he decided to commit this crime. That his son was locked up the day before." Transcript of Oral Argument, *supra*, at 19:14-16, ECF No. 16-9.

Viewing the prosecutor's statement against the aforesaid background, the Appellate Division concluded that "[t]he prosecutor did no more in his summation than respond to [defense counsel's] comments." *Padro*, A-3127-04T4 at 8, ECF No. 16-35. In this Court's view, the Appellate Division's reasoning is supported by the record; the prosecutor's statement was his response to defense counsel, not an attempt to intimate guilt by referring to Petitioner's economic class. Moreover, the appellate court properly considered the prosecutor's statement in the context of defense counsel's statement previously made to the jury. *See Young*, 470 U.S. at 14-16.

The Court further notes that, in his reply brief, Petitioner challenges several additional prosecutorial statements.[6] He argues that the prosecutor "wrongfully discussed trial counsel's role in presenting a defense" by stating that trial counsel

> is a well respected attorney who is serving his client's interest [ ] vigorously and forcefully[,] and that's his responsibility. But to take the misstatement of a scared unsophisticated woman and turn it into a defense theory. Turns it into the bogeyman.  There is nothing in the case that suggest that that's true.

Pet. Reply at 26-27, ECF No. 24. In Petitioner's view, the prosecutor belittled and demeaned defense counsel by speaking about him in this fashion. *Id.* at 27. Additionally, Petitioner argues that the prosecutor erred in telling the jury that Petitioner "didn't go to Connecticut to save his knee.[7] He went to save his ass.  That's flight.  That tells you he's guilty." *Id.* According to Petitioner, this language was "demeaning and highly inflammatory." *Id.*

While Petitioner may have found the prosecutor's reference to "bogeyman" and "ass" to be offensive, Petitioner has not pointed to any Supreme Court case law that deems this sort of language inflammatory or, more importantly, that use of this sort of language constitutes prosecutorial misconduct that runs afoul of the Constitution. The only case that Petitioner cites is *Berger v. United States*, which is unhelpful to him here. 295 U.S. 78 (1935). The prosecutor in *Berger* used arguably demeaning language for the purpose of misleading the jury to convict the defendant in that case. There, the prosecutor stated:

> Mrs. Goldie Goldstein takes the stand. She says she knows Jones, and you can bet your bottom dollar she knew Berger. She stood right where I am now and looked at him and was afraid to go over there, and when I waved my arm everybody started to holler, 'Don't point at him.' You know the rules of law. Well, it is the

---

[6]     While it appears that Petitioner did not challenge these particular statements before the state courts, as noted *supra*, the Court may address challenges on federal habeas review even if such challenges are unexhausted when, as here, the challenges fail on the merits.

[7]     Petitioner had testified at trial that he went to Connecticut to have surgery performed on his knee. *See Padro*, A-3127-04T4 at 4.

21

> most complicated game in the world. I was examining a woman that *I knew* knew Berger and could identify him, she was standing right here looking at him, and I couldn't say, 'Isn't that the man?' Now, imagine that! But that is the rules of the game, and I have to play within those rules.

295 U.S. at 86-87 (emphasis added). What was troublesome to the Supreme Court about this passage was that it "invited [the jury] to conclude that the witness Goldstein knew Berger well but pretended otherwise; *and that this was within the personal knowledge of the prosecuting attorney.*" *Id.* at 87 (emphasis added). The Court further pointed to an example of the prosecutor implying that defense counsel "twist[ed]" a witness, and devised ways to cheat the system. *Id.* The Court explicitly noted that the prosecutor's misconduct was not "slight or confined to a single instance, but . . . was pronounced and persistent," thus, the Court ordered a new trial. *Id.* at 89. Here, unlike in *Berger*, Petitioner has not shown that the prosecutor suggested to the jury that he had personal knowledge that the jury did not. Nor has Petitioner shown that the prosecutor engaged in persistent misconduct. Accordingly, the prosecutor's isolated references to "bogeyman" and "ass" do not run afoul of *Berger*.

In sum, Petitioner's "vouching" arguments are without merit. Petitioner has not demonstrated that the state court's judgment was contrary to, or involved an unreasonable application of federal law, as required by 28 U.S.C. § 2254(d)(1). Habeas relief will not be granted on Grounds Two and Six of the Petition.

6. Detective DeAngelis' Testimony was Properly Admitted (Ground Three).

Lastly, Petitioner argues that the testimony of State's witness Detective Albert DeAngelis should not have been admitted because it was unduly prejudicial. The Appellate Division, on direct review, was the last court to address this issue, dismissed the claim: "The testimony was relevant to the charges Defendant faced and was not unduly prejudicial." *Padro*, A-3127-04T4 at 8, ECF No. 16-35. For the reasons explained below, the Appellate Division's opinion is entitled

22

to AEDPA deference barring a misapplication of clearly established federal law and, as there is no such misapplication here, this claim will be denied.

Detective DeAngelis testified on behalf of the State to identify and educate the jury on the particular handgun seized from Defendant. Defendant challenged the testimony under N.J.R.E. 403, arguing that most of DeAngelis' testimony was "cumulative" in nature and indulged in "irrelevant and prejudicial facts" that only served to "impress in the minds of the jurors that Defendant was a professional criminal who had access to" high-end weapons. Brief for Petitioner on Appeal, *State v. Padro*, A-3127-04T4 at 27-28, ECF No. 16-32. The State counters in its Answer to the Petition that it is inappropriate for a federal habeas court to review a state court determination of state law. Brief for Respondent at 25, ECF No. 20.

In general, as noted above, state evidentiary rulings are not cognizable on federal habeas review. *Ross v. District Attorney of the County of Allegheny*, 672 F.3d 198, 207, n.5 (3d Cir. 2012). However, if there is a due process violation at work, the federal court can address that claim. *See Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (*quoting Riggins v. Nevada*, 504 U.S. 127, 149 (1992)) (citation and internal quotation marks omitted).[8] Here, Petitioner alleges that the admittance of Detective DeAngelis' testimony was improper under New Jersey evidentiary rules. Therefore, the Court does not construe the petition as raising a due process claim. Even if the Court were to construe the petition as raising a due process claim, such a

---

[8]

> To prevail on [a] due process claim, [a petitioner] must prove that he was deprived of "fundamental elements of fairness in [his] criminal trial." . . . The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." In order to satisfy due process, Glenn's trial must have been fair; it need not have been perfect.

*Id.* (internal citation omitted).

claim would be denied because Petitioner has not pointed to any Supreme Court precedent holding that testimony educating a jury about a handgun is unduly prejudicial or undermines the fundamental fairness of a criminal proceeding. Accordingly, habeas relief will be denied on this ground.

## V. CERTIFICATE OF APPEALABILITY IS DENIED

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.2. This Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The discussion of Petitioner's claims above demonstrates that Petitioner has not made such a showing, and this Court will not issue a certificate of appealability.

## VI. CONCLUSION

This Court concludes that the state court utilized and applied the correct law to Petitioner's claims. Furthermore, Petitioner has not shown by clear and convincing evidence that the state courts' determination of the facts was unreasonable. Therefore, this petition for habeas relief is denied.

MICHAEL A. SHIPP
United States District Judge

Date: 10/6/15